Thank you, Your Honor. If it please the Court, my name is Charles Talbot. I represent Daniel Berry. The main issue in the case is whether or not the Administrative Law Judge in the second hearing in this case interpreted this Court's remand decision from September 2010 correctly. Our position is that he read it too narrowly. The Administrative Law Judge went through a statutory analysis to determine whether or not the remand decision was correct. Whether or not Berry's opiate drug medications would prevent him returning to his past work as a commercial courier driver. However, that's not what this Court said. What this Court said is we agree with Berry. If a drug prescription disqualifies a claimant from performing his past relevant work, he's not capable of returning to that work. When we went to the hearing in this case, the judge focused on whether or not there was a statutory barrier to Berry returning to his work as a courier driver. We expected that the vocational expert at the hearing would acknowledge that she was familiar with the rules of a commercial drug. When you say the judge focused on whether there was a statutory barrier, was that at Step 4 or Step 5? He is doing the RFC type part, which we do before Step 4 and Step 5. We don't get into Step 4 or Step 5 until we determine what the claimant is capable of doing. Once you get past Step 3, which is the presumptive disability rule, we then get into determining what the claimant can bring to the work site. The licensing requirement of commercial drivers was something that was argued extensively before this Court in the first decision. But wouldn't that just be harmless error? Because when you look at what the administrative law judge did at Step 4 and then going on to Step 5, isn't it of no consequence, really, what you're talking about at that point? Because at Step 4, even though the administrative law judge made certain findings, at the appellate level, there was that declaration that you submitted of Dr. Moysen's declaration, and then even further at Step 5, which is the commissioner's burden of proof, there was an analysis that went through other types of work, not just the commercial driver. I understand, but the evidence from Dr. Moysen was evidence that was submitted to the Appeals Council, and the Appeals Council accepted it as evidence, so that is a part of the record. Correct. And Dr. Moysen said that this is a general requirement across the board. It's not limited to commercial driver's licenses or CDLs. It is across the board. It is a mandate by all employers that you must pass a drug test in order to qualify. And this is not just prescription drugs or illegal drugs or whatever kind of drugs they are. Right. He said Oxycontin, Percocet, and Methadone are Schedule 1 drugs under the DEA. So your point is, how can he return to work when he's going to have to be drug tested pursuant to Dr. Moysen's declaration? There wasn't anything in opposition to that. So then we get to the Step 5 determination. Okay. Okay, and so the Administrative Law Judge went through this whole analysis recognizing it's the commissioner's burden of proof, and the vocational expert testified with regard to these other types of position in the national... The burden of the commissioner at Step 5 is to show that job numbers of specifically identified jobs exist in significant levels at the national, certainly at the national level. And when the DEA was asked the question whether the job numbers she identified for each of the three jobs that she gave in her testimony, she said no. So the commissioner fails in the burden at Step 5. What is the burden in the sense of numbers? Isn't the rule that the V.E. has to show that there are jobs in significant numbers in the national economy? Is there a particular specific numerical number that has to be shown in order to meet the requirement? No, it's undefined. And this court, forget the name of the case, and I can certainly cite it to the court, send a reference to it. I think there's a case by this court that said something to the effect 14 or 1,500 jobs in the national economy is not a significant number. I've never seen that case. Why don't you send us a 28-J letter if you have such a case? I will. I'm not sure it makes a difference. But does the significant number issue come up even at all in the sense that she said the numbers I gave don't apply to the discrete jobs that I named? We're not talking about job A with numbers B. We're talking about job A with the numbers don't relate to that job, which is a slightly different part of that issue. Okay, so you're saying that we should remand it and have her put numbers in? I mean, what are you arguing here? The burden is on the commissioner. The commissioner can't identify job numbers by specific job titles. The commissioner has failed in the obligation to identify job numbers for a specific job. Now, once you get past that, the question then becomes, is the number that relates to that specific job, is it significant or not? But the first issue is, is there job numbers of any sort? Okay, so you're saying if basically no evidence on it, it's zero and zero can't be significant. Exactly. In other words, the first part is, is there a job number that is attributed to that specific job? And if so, is that number significant? It's a two-step. What if the V.E. says there are a significant number of jobs of X, Y, and Z in the national economy? Is that sufficient? I'm not sure I understand the question. In other words, you're complaining about the numbers that were used by the V.E. because when she was questioned, she said they weren't tied to the particular jobs that she mentioned. So my question is, if you take away the numbers, and she simply uses the term that there's a significant number of these jobs in the national economy, does that satisfy Step 5? No. And what case do you rely upon or what regulation? Well, it's always been the case that you have to put a number with the job. Okay. What's the authority for that? I can't tell you as I'm standing here, but that's always been the way it is. You have to give a number for a job. You can't just make a vague significant numbers without getting it. Why don't you add that to your 28-J letter? Okay. Okay. Some other issues include the fact that the judge made it perfectly clear he was not going to revisit the RFC in this case. He says, I'm not going to get into the issue of disability. So he was reading this court's decision very, very narrowly. And at the end of the hearing, Mr. Berry said that the medications he takes cause pretty significant side effects, and those side effects were not considered in this case. In fact, the judge specifically said, I'm not going there. So the court, when it remanded the case, said the judge can revisit that case. It seems to me if the ALJ can, so can the claimant. I mean, the claimant ought to be allowed to present his case, and I think the ALJ was just too restrictive in this case. On the issue of the 100% VA disability rating, the court said that they agreed with the prior judge on two of the three issues we raised and remanded the case and said the judge should take another look at the VA decision. And what he said was that the VA decision just didn't match up with the law, and he said there are burdens much less than here. All right. What's your position as to whether he's compelled to accept what the VA's rating and analysis is? I didn't say he's compelled. This court said should. Well, he referred to it, so is that enough? I don't think so. I think he has to take into effect what the claimant condition is because I think he cited the fact that the VA record showed that Mr. Berry was stable on his pain medications. Well, stable is undefined, and stable doesn't mean fixed. It doesn't mean that he's better. It just means he's not getting worse and he's not getting better. And he does have significant limitations and impact from his medications, and that's really not considered by the judge. And the judge talks about, or at least in the commissioner's brief, talks about burden of proof, but here burden of proof is a scintilla, and so I think the burden of proof for the VA in here is roughly at an even level. But you admit the administrative lodge did consider it. Oh, he did. And so on remand we asked him to consider it, and it's his discretion how much to weigh into it and how much value to give to that information. So it's not like he refused to have you point out that information or that he was unaware of that information. He certainly considered it. Well, at least he wrote he did, but in the context of saying I'm not going to revisit the RFC, I'm not going to revisit disability in this case, it's like what does it matter? He can write about it, but if at the end of the day the RFC doesn't change and he doesn't allow any testimony on that issue, he can write what he likes, but at the end of the day it doesn't matter. But he's already taken into account information, more current information than the last hearing, correct, from the VA? He is, but at the end of the day, if he's going back and adopting the RFC determination of the judge in the 2007 hearing, my point is it doesn't change anything, it doesn't affect anything. And he said he was not going to reconsider the RFC before he went into the analysis about the VA decision. But after he had heard the additional evidence and considered what he did? Yes. Okay. Are there any more questions? Do you want to save the rest of your time for rebuttal? Thank you. Very well. Okay, we'll hear from the commissioner. May it please the court, counsel, Lars Nelson on behalf of the Commissioner of Social Security. This court should affirm the decision of the administrative law judge because it is supported by substantial evidence and free from prejudicial legal error. I guess I would like to jump right into the issue raised for the very first time at oral argument being the job numbers. This court in Bayless v. Barnhart held that the Plaintiff's Counsel cannot challenge the qualifications of the vocational expert to testify to the matters at issue. And trying to pierce now at oral argument the foundations of the VE testimony is effectively challenging those qualifications. Well, I understood, though, the question being raised by counsel wasn't to the qualifications of the vocational expert, but rather the burden of proof in terms of he's saying there's case law to indicate there's a two-step analysis. The first step is you have to actually show numbers, a specific number of jobs in the national economy for that specific occupation. And secondly, then you have to analyze whether it's significant or not. And here he's saying basically there was no number given, so I assume that we mean it means zero, and then zero can't be significant. What's your response to that? Is there such a requirement? I don't believe so. I would direct the court to 20 CFR section 404, 1565, or 1566B, and it starts how do we determine the existence of work. And it says, quoting, work exists in the national economy when there is a significant number of jobs, parents in one or more occupations. So that gets to the question that I ask counsel whether if the VE says there are a significant number of jobs in the national economy in this area, at least according to the regulation you're citing, would that be sufficient? Yes, because obviously when we're talking about exact number of jobs, it is based on an estimate. And there were three jobs here, and the ALJ could reasonably infer that there was a significant number. Taking together the three jobs with the testimony of the vocational expert. But I do have to add that the commissioner didn't brief this issue. It's not raised in any of the briefing, and so I am presenting the best case I can at oral argument. Is it your position that since it wasn't raised in the briefs and so on, that it's a waived issue in any event? Yes, Your Honor. Was it raised at the administrative hearing? In other words, when the VE says there are a significant number of jobs, on cross-examination, was he asked, well, how many is that? Yes, I believe that there was colloquy about. And what was the answer? The vocational expert discussed the method by which the numbers are arrived at. It's a software program. What were the numbers? Oh, the specific numbers? Those would be cited at the end of the ALJ's decision. I don't know the exact page of the testimony, but the vocational expert did provide job numbers that the ALJ relied on. The argument presented here today. The ALJ, in effect, accepted as being a significant number. Correct. Can you help me with something? What I thought counsel said was that numbers were given by the VE, but when questioned, the VE said that those numbers didn't particularly apply to the jobs that referenced. If I understand your comment, you're saying that ultimately there were specific numbers given that were tied to the jobs in question, or is that incorrect? I mean, I believe the testimony was that the numbers are derived from categories of jobs, and my argument here today, without any benefit of reviewing or briefing the topic, would be that the vocational expert can use her expertise to say that there are a significant number, and the ALJ can also rely on this broad category under the regulations, especially where there's multiple jobs cited by the VE, so the ALJ can derive from all those jobs together that even if the number is over-inclusive, there still remains a significant number. It would have to be estimates in any event, right? I mean, how can someone say, whoever they are, that there are X number of jobs in the national economy in a particular thing? I mean, those could change by the second. How could you know exactly? So they would have to be estimates in any event, right? An estimate in any event, and also an estimate obviously qualified by the vocational expert's expertise and responding to the specific hypothetical and the residual functional capacity assessment. I guess the ultimate question here is does the record support the VE's conclusion, I guess adopted by the ALJ, that there are a significant number of jobs, at least on these what? There are like three jobs, categories amount to a significant number. So the question is, well, let me ask a qualification question. Is it the commissioner's position that this issue of whether or not there are a significant number of jobs in terms of numbers, as Judge Smith said, is that an issue properly raised on appeal in the commissioner's view? Absolutely not. Because why? It wasn't briefed? It was not briefed. It was not waived. It wasn't even addressed at the district court level. Job numbers are appearing for the first time as we stand here today. The lack of numbers? The lack of significant numbers. For instance, I mean, one category is I think either hotel or motel housekeepers, right? Correct. Now, but there was some colloquy about that at the administrative hearing, right? There was colloquy about where the vocational expert identified that job, and then I believe there was colloquy about the jobs generally. I didn't review that section of the vocational testimony in great detail, but I can expound upon it here. Because in your view it was not raised as an issue? Correct. And you say to your recollection it was not raised in the district court either? The district court, the R&R certainly, report and recommendation, certainly didn't address it in any respect. Let me just make a note here to see what difference this makes. This is on the SER page 12, and this is the magistrate's recommendation at line. Well, there is no line here. It says in response, the vocational expert identified the following jobs, hotel, motel, housekeeper, and it's much stuff about titles, with 4,205 jobs in Washington and 243,915 jobs nationwide, solder, production line with 1,456 jobs in Washington, 81,000, and so on. These are pretty significant numbers nationwide. And it says the ALJ concluded the plaintiff had the residual functional capacity to perform other work, including the jobs identified by the vocational expert, and is therefore not disabled. And then it says plaintiff does not dispute that any error at Step 4 could have been corrected by the ALJ's alternative Step 5 findings. But he reiterates his arguments that the ALJ erred at Step 5 because he failed to account for various limitations in the RFC assessment, which gets back to Step 3, I believe, maybe even 2. But bottom line is it sounds like, at least from the magistrate judge's report, that we're not talking about 2, 3, 4. We're talking about thousands and thousands of jobs. And if it were off by 10,000, does it make any difference if we consider this? Yes. As I look at it, there's over 300,000 jobs that the ALJ relied on, and this court, in a case called Gutierrez, affirmed that 25,000 jobs in the national economy was a significant number in that case. And so I would say that there is a wide berth of error where the ALJ's decision can still, nonetheless, be supported by substantial evidence. As far as the, I guess I'll quickly turn to the other issues, the declaration provided to the Appeals Council is related to drivers of commercial vehicles and the universal practice in the transportation industry. So the vocational testimony provided to the Appeals Council does not support that drug testing is mandatory in all jobs in the national economy. But don't we have to take what was said on the report to the Appeals Council, don't we have to take that as true? But even if we do, doesn't the fact that it's Step 5, you have all these other jobs, which don't require the drug issue, doesn't that, in effect, render it harmless error? Yes, Your Honor. And I was responding to what I believe was counsel's argument that the vocational expert's testimony was that absolutely all jobs require drug testing. Well, that's one of the issues raised by the plaintiff here, is whether or not other jobs outside of the transportation field require, either as a matter of regulation or custom or convention amongst all employers, do require drug testing. Isn't that an issue that's raised in this case? It is, Your Honor, and that was the second part of that 2001 Veterans Affairs determination where they said that because he's taking these narcotic drugs, he would not be able to pass drug tests, ergo he couldn't get any job. He was completely unemployable. That part was discounted by the ALJ. Okay. That was discounted because the ALJ walked through and said, yes, he probably can't do some public safety jobs and jobs related to national security. There might even be some other federal jobs that he could not do, but at the end of the day. Is there anything, say, similar to the, what was the fellow's name, Mosian? Mosian, the one who gave the declaration to the Appeals Council, what's his name? Yeah, Mosian, yes. Mosian, is there anything similar to his declaration relating to jobs outside the transportation industry about the requirement of drug testing? As you say, his declaration relates only to the transportation industry, right? Correct. As far as drug testing goes? Correct. So my question is, is there anything in the record relating to other industries similar to that about whether or not drug testing is required or is a convention in other industries? There's not a vocational testimony. There's nothing on that point. I think, though, we could derive that it wasn't required from. . . That it was not required? No, that it wasn't required for, because he testifies that his past relevant work, that they basically turned a blind eye to the fact he was taking some drugs. Now, he wasn't taking the methadone at the time. But that was all in his job as a courier. I'm talking about jobs outside of the transportation industry. No, that's right. The ALJ only relied on legal authority for that proposition. No, but my question is, is there any testimony in the record that would support a conclusion that this requirement applies in other industries, say, like in the . . . No, there is no testimony that a drug testing applies to all industries, just as there isn't specific testimony to the opposite effect. Okay. Now, whose burden is it on that issue? That pertains to the residual functional capacity assessment, which is between Step 3 and 4, so it would be plaintiff's, the appellant's burden. The applicant's burden, then? It would be the applicant's burden. Because it's a part of the RFC? That's correct. But at Step 5, when he's considering other work that he could do in the national economy, that's the commissioner's burden. That is the commissioner's burden. And so there are those three areas, occupations, that were identified, soldier, housekeeping, and so forth. Yes. What's the testimony or indication that the ALJ reviewed any evidence having to do with whether or not the applicant's prescription drug use would be a barrier because of drug testing? For that proposition, the ALJ drops a footnote and says none of these jobs pertain to the national security or public safety sectors, which is the only area where drug testing is mandated. Exactly. And so where does he get that, though, that it's only related to those areas? He gets that from the Omnibus Transportation Employee Testing Act of 1991. Right. So that has to do with the Transportation Act having to do with transportation. So I guess my question is that he gets to that conclusion by exclusion, right? He says it's not in this particular requirement because we know that federal and state positions having to do with security and so forth. But where do you have it that excludes everybody else? Well, my understanding is from the legal research that the ALJ did, the ALJ tracked down the statutory authority for where drug testing is mandated, and this was the only area that he could find, public safety and interest of national security. All right. I have another question, so I'll just ask the Chief if I can go ahead. I know you're over time because of me. Okay, but that has to do with legal mandates. What about practices in the work community? I mean, doesn't the ALJ have to take that into account, that there may not be a legal mandate to test employees for drug use, but in other occupations or it may be the occupational practice in certain areas, even though it's not legally mandated, that there would be drug testing, and therefore because he took these prescription drugs, he would not either be qualified to be hired or he would be fired if he were hired and tested positive. Well, the proposition for that would be the ALJ's reliance on the Americans with Disabilities Act and the state corollary because the ALJ said that if you're taking medication, that it would be the employer's burden to show that it would preclude you from doing the specific position, taking that medication. So it's the commissioner's position that by relying upon various acts, such as the Americans with Disabilities Act, showing that unless it impaired the person's ability to perform certain kinds of work, it would be illegal to fire somebody who did take prescription drugs. Is that enough to offset actual testimony in the form of the declaration to the contrary about the claimant? Well, yes, and I don't think that the ALJ is citing this to contradict as to the transportation industry, which is the... Well, I think what all of us are struggling with here is on the one hand, you've got some evidence put in by the claimant, which does not seem to have been met by the commissioner to refute it or at least meet it. Is there something that we're missing here? Well, the evidence put in by the claimant only pertains to the transportation industry, and none of the jobs relied on them by Step 5 are transportation jobs. I see. So you're saying since it was just about transportation, the fact that the law doesn't require it is enough to meet that. Yes, and I think the ALJ does have some leeway with common sense that every job in the country does not require drug testing, and the claimants would often be protected under the American Disabilities Act if they're taking prescription medication. It would be the employer's burden to show that that precludes them from performing that specific work. Any other questions by a colleague? Thank you very much. You have some rebuttal time, counsel, if you wish. Thank you. Addressing the Step 5 question and the impact of drug use, it goes back further. It goes back to the RFC, and the judge made it absolutely clear he was going to adopt the RFC that was in the prior decision. There's nothing in the prior RFC that talks about the impact of prescribed medications. When we tried to introduce that evidence in this case, the judge says, I'm not going there. Well, if you can't provide information that's going to impact the RFC, then you're at a disadvantage at Step 5. Okay, but at the appellate level, you provided Dr. Moysen's declaration, which was unrebutted, and so that, I think, rules out the transportation occupation. Okay, but I'm going past that. I'm saying, okay, if we assume that Dr. Moysen's declaration is sufficient to exclude past work at Step 4, and we then move on to Step 5, the disadvantage to the claimant is the fact that because we couldn't get that evidence into the RFC, we don't have any basis for challenging at Step 5 the impact of medications and prescription medications and the impact on the claimant when he's taken those medications as it relates to his ability to do those jobs identified by the vocational expert. Okay, we'll see. So let's do the flip side since at Step 5 it's the commissioner's burden. Is there sufficient evidence in the record to support that conclusion? No, and let me point out a couple of things. First of all, on page 836 of the record, the vocational expert, in response to questions, says that when she gave the job numbers she did for the individual jobs, they were job numbers for what are called OES groups or Occupational Employment Survey. And these are groups of jobs of which the job that was unidentified by the V.E. is one of the jobs in the group. So she's not giving these big numbers for those particular jobs but for the whole group. And she confirms that in her testimony on page 840 when she's asked, is it possible at any point in time to count the single job how many jobs exist? The answer is no. That's the issue that I raised before you get this. How can you possibly know exactly how many jobs there are in the national economy at any given moment? I understand. And I understand what your concern is. But the problem is here is that there's the preliminary question, is she's not giving a job number regardless of size for that job. She's giving it for a group of jobs. She needs to further refine that number down. And it may very well be that there are a significant number of jobs for a particular job that's named, but that doesn't exist in this case. What exists is job numbers for some undefined size group. I think we have your point on that. Any other questions my colleagues have? Just the last one. With regard to the occupation, she does identify the housekeeping, et cetera. Is there any evidence in the record that should lead us one way or the other that drug testing would be required or would be used or would be the custom in those industries and therefore provide a barrier to your client? Or is he protected by ADA as your opposing counsel? Not specifically. In this file, there's no specific issue about drug testing as a part of those three identified jobs. But more importantly, I think, is can he do the jobs with taking the opiate pain medications on board? He's taken methadone. He's taken Percocets. He's taking them in increasing doses, and they do have an impact on his ability to function. All right. Thank you. Very well. Thank you. Thank you both, counsel. The case just argued is submitted.
judges: Tashima, M. Smith, Kobayashi